UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WAYLAND X. COLEMAN,<br><br>Petitioner,<br><br>v.<br><br>JOANN LYNDS,<br><br>Respondent. | Civil Action No. 24-30043-MGM |

MEMORANDUM & ORDER REGARDING
RESPONDENT'S MOTION TO DISMISS PETITION
(Dkt. No. 16)

December 8, 2025

MASTROIANNI, U.S.D.J.

I. INTRODUCTION

Petitioner, Wayland Coleman, was found guilty of murder in the first degree on a theory of deliberate premeditation and unlawful possession of a firearm on October 29, 1998, and sentenced to life in prison without possibility of parole. Trial counsel continued representing Petitioner after the verdict. During his direct appeal, Petitioner filed a motion asking counsel to withdraw and requesting that a different attorney screen his case for potential ineffective assistance of counsel at trial. The Massachusetts Supreme Judicial Court ("SJC") affirmed his conviction without ruling on the motion to withdraw. More than twenty years later, Petitioner asked the SJC to grant his original motion for new counsel and withdraw the rescript entered in his direct appeal.

The SJC declined to revisit the motion to withdraw or the 2001 decision affirming Petitioner's conviction in an order issued on March 31, 2023. Petitioner continued seeking relief in state court and

also filed his Petition for Writ of Habeas Corpus with this court on March 27, 2024. Respondent moved to dismiss, arguing the petition is time-barred.[1] After review, the court concludes the petition is timely and denies Respondent's Motion to Dismiss (Dkt. No. 16).

## II. PROCEDURAL HISTORY

On October 30, 1998, the day after the jury rendered its verdict, Petitioner's trial counsel filed a timely notice of appeal, and a motion to set aside the verdict of murder and enter a finding of not guilty or order a new trial, or, alternatively, reduce the verdict to manslaughter. Petitioner's counsel at trial, and for the duration of the appeal, was also the chairman of the Committee for Public Counsel Services ("CPCS"). Well after counsel filed the appellate brief, and just two weeks before oral argument, Petitioner filed a motion asking counsel to withdraw and requesting appointment of new counsel to review whether he had received ineffective assistance of counsel at his trial.

The SJC did not rule on Petitioner's motion prior to the scheduled oral argument, and Petitioner's trial counsel appeared to argue the direct appeal. During oral argument, the SJC asked about Petitioner's motion and counsel responded: "I do not see any reason at this point for me to withdraw unless the Court thinks it is appropriate." (Oct. 1, 2021, Mem of Dec., Worcester Super. Ct., Dkt. 16-4, 34.) He went on to explain that CPCS was "not in the habit of paying for representation twice unless the Court feels that it's under the circumstances necessary." (*Id.*) Trial counsel also expressed his belief that he "could still be an advocate with the defendant's best interests in mind," and opined that "every conceivable issue that could be raised" had been raised and the appeal "covered all the bases." (*Id.*) The SJC stated that it would take Petitioner's motion under advisement before permitting trial counsel to argue the appeal. (*Id.*) On May 17, 2001, the SJC issued a decision affirming

---

[1] Respondent also argued that Grounds One and Two of the petition were not yet exhausted. This argument became moot when the SJC denied Petitioner's gatekeeper application on July 9, 2024.

2

Petitioner's conviction. *Commonwealth v. Coleman*, 747 N.E.2d 666 (Mass. 2001). The opinion did not mention Petitioner's motion, and there is no evidence the SJC ever acted on the motion. The rescript was received by the trial court on June 20, 2001, and the case was referred to CPCS for review. (Super. Ct. Docket Sheet, Dkt. No. 20-1.)

Proceeding pro se, Petitioner filed a motion for new trial with the trial court on August 30, 2001. (*Id.*) He had previously filed the motion with the SJC on August 17, 2001, but the SJC had returned the motion to Petitioner and directed him to file it with the trial court. (Oct. 1, 2021, Mem of Dec., Worcester Super. Ct., Dkt. 16-4 at 2.) The trial court determined Petitioner's motion did not comply with Rule 30(b) of the Massachusetts Rules of Criminal Procedure and denied the motion without prejudice on September 19, 2001. (Super. Ct. Docket Sheet, Dkt. No. 20-1.) Almost seven months later, on May 3, 2002, Petitioner, still proceeding pro se, filed a renewed motion for new trial. (*Id.*) The motion identified three grounds for a new trial, asserted that Petitioner's inability to obtain alternate appellate counsel had deprived him of a fair appeal, and requested that he be permitted to amend his motion "when an attorney has made inquiry into his claims and is present to help him on the motion." (New Trial Mot., May 3, 2002, Dkt. No. 24-1 at 2.) Petitioner's motion was accompanied by a lengthy memorandum.

Screening counsel was appointed the same day, and, at the request of screening counsel, the court issued an order on May 14, 2002 stating the court would not act on the motion before September 3, 2002. (Mass. Trial Court Docket, Dkt. No. 20-1.) On August 23, 2002, Petitioner requested the court extend the time during which it would not rule on the Motion for New Trial for an additional 60 to 90 days. (Mot. for Ext. of Time, Aug. 23, 2002, Dkt. No. 24-2 at 1.) The court granted the motion, without identifying a new date after which the court would rule on the motion. (Mass. Trial Court Docket, Dkt. No. 20-1.) Two months later, on October 31, 2002, screening counsel entered an appearance in the case and filed a motion for funds to retain an investigator. (*Id.*) An affidavit of

3

indigency was filed on December 9, 2002 and the court granted the motion for funds on February 28, 2003. (*Id.*) The docket shows no further activity in the case until new counsel filed a Notice of Limited Appearance on January 31, 2019. (*Id.*)

On July 1, 2020, Petitioner filed another motion for new trial. The motion asserted Petitioner had been deprived of effective assistance of counsel during his trial and on direct appeal. Following a non-evidentiary hearing, Judge Ritter of the Worcester Superior Court issued a lengthy decision on October 1, 2021. The decision reviewed and rejected Petitioner's arguments that trial errors warranted a new trial, and also considered Petitioner's argument that he was denied effective assistance of counsel during his appeal. (Oct. 1, 2021, Mem of Dec., Worcester Super. Ct., Dkt. 16-4.) Judge Ritter concluded that the loyalty of Petitioner's counsel was divided during the direct appeal, but explained the court had no jurisdiction to review the SJC's original handling of the conflict issue. Counsel for Petitioner understood the decision as suggesting Petitioner make a direct application to the SJC.

On March 28, 2022, Petitioner filed a new motion directly with the SJC. The motion requested the SJC (1) revisit the Petitioner's motion requesting his trial attorney withdraw as appellate counsel, (2) withdraw the rescript, and (3) permit Petitioner to pursue a reopened direct appeal with the assistance of new counsel. A year later, on March 31, 2023, the SJC ruled that Petitioner had "failed to demonstrate . . . either a potential or an actual conflict" occurred when he was represented by trial counsel during his direct appeal. (SJC Order of Mar. 31, 2023, Dkt. No. 3 at 24.) The SJC also explained the motion for rescript was procedurally improper and Petitioner should have utilized the gatekeeper procedure to appeal the Superior Court decision denying his July 1, 2021 Motion for New Trial. Believing the SJC had misunderstood the type of relief sought by Petitioner, Counsel filed a Motion for Reconsideration, which was denied on August 7, 2023.

Petitioner then returned to the Superior Court and, on September 11, 2023,[2] filed a motion asking the court to reconsider the previous denial of his motion for new trial, vacate the original guilty verdict, reinstate the judgment, and re-sentence Petitioner to enable him to take a new direct appeal from his conviction. (Mot. to Vac., Dkt. No. 20-8.) After that motion was denied on October 23, 2023, Petitioner pursued an appeal by filing a gatekeeper application with the SJC pursuant to Mass. Gen. Laws c. 278, § 33E. While the gatekeeper application was pending, Petitioner filed his petition with this court on March 27, 2024. The SJC, acting through a single justice, denied the gatekeeper application on July 9, 2024, concluding it was both untimely and did not raise a new or substantial question that warranted review by the full court. (SJC Order of July 9, 2024, Dkt. No. 22-1.)

III.     TIMELINESS UNDER THE ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT

"Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism." *Martinez v. Ryan*, 566 U.S. 1, 9 (2012). "Congress enacted [the Antiterrorism and Effective Death Penalty Act ("AEDPA")] on April 24, 1996, in part to combat increasingly pervasive abuses of the federal courts' habeas jurisdiction." *Neverson v. Bissonnette*, 261 F.3d 120, 124 (1st Cir. 2001). One of the ways AEDPA restricts the authority of federal courts to consider habeas petitions filed by state prisoners is by imposing a one-year limitations period. 28 U.S.C. § 2244(d)(1).

The limitations period generally begins to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). When a direct appeal is taken in Massachusetts and litigated through the SJC,

---

[2] Petitioner's motion is dated September 7, 2023, but the state court docket shows that it was filed on September 11, 2023. (Mass. Trial Court Docket, Dkt. No. 20-1.)

5

the conviction becomes final when the period for seeking certiorari expires 90 days after the date of the SJC decision. *David v. Hall*, 318 F.3d 343, 345 (1st Cir. 2003). A properly filed application for post-conviction relief tolls the limitations period while the application is pending before the state court. *Holland v. Florida*, 560 U.S. 631, 635 (2010); 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward [the one-year limitations period].") Whether a motion for post-conviction relief is properly filed is determined by applying state law. *Holmes v. Spencer (Holmes I)*, 685 F.3d 51, 60 (1st Cir. 2012). Additionally, the limitations period is not jurisdictional, and a court may apply equitable tolling when a petitioner "shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland*, 560 U.S. at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

## IV.    DISCUSSION

Petitioner's conviction became final on August 15, 2001, 90 days after the SJC issued its decision on May 17, 2001. Although nearly 23 years passed before Petitioner sought relief in federal court, he contends fewer than 300 days of the one-year limitations period have elapsed: 260 days between August 15, 2001 and May 3, 2002, and additional days between August 7, 2023 and September 11, 2023.[3] He argues statutory tolling applies to exclude the periods from May 3, 2002 through October 1, 2021 and September 7, 2023 through the date he filed this petition. The Petitioner also asks the court to apply equitable tolling to exclude the period between October 1, 2021 and August 7, 2023.

---

[3] Petitioner's calculations include an additional 31 days for this period; the court calculates that this period adds 35 days towards the one-year limitations period.

A. Statutory Tolling

Under AEDPA, statutory tolling excludes any time during which a "properly filed application for State post-conviction or other collateral review . . . is pending." 28 U.S.C. § 2244(d)(2). "[A]n application for state post-conviction relief is pending from the time it is first filed until the time it is finally disposed of and further appellate review is unavailable under the particular state's procedures." *Drew v. MacEachern*, 620 F.3d 16, 21 (1st Cir. 2010) (quotations and alterations omitted). The final disposition must resolve the application and foreclose any further review of the application. *Id.* (recognizing that a "gatekeeper petition ceased to be pending for purposes of § 2244(d)(2) when it was dismissed for lack of prosecution" because the dismissal was "final and unreviewable").

Statutory tolling clearly applies to the period between September 11, 2023, the date Petitioner filed his motion to vacate with the Superior Court, and March 27, 2024, the date he filed his petition with this court. The motion was procedurally proper and remained pending until July 9, 2024, when a single justice of the SJC denied Petitioner's motion for leave to appeal the denial of the motion to vacate. Since the motion was a properly filed application for post-conviction relief and was not fully disposed of until after the pending petition was filed, statutory tolling under AEDPA applies to the full period.

Petitioner asserts statutory tolling also excludes the much lengthier period from May 3, 2002, when he filed a renewed motion for new trial, through October 1, 2021, the date the Superior Court ruled on his superseding motion for new trial (filed by new counsel). Respondent contends Petitioner's May 3, 2002 Motion for New Trial was not properly filed and did not remain pending until the Superior Court ruled on the superseding motion. Massachusetts courts have recognized that a motion may be merely a placeholder, rather than a properly filed motion, if the motion fails to "indicate the grounds on which it is based" within the time permitted for filing the motion. *Commonwealth v. DeJesus*, 795 N.E.2d 547, 551-52 (Mass. 2003). Respondent does not argue Petitioner's May 3, 2002 motion

7

lacked the substantive components necessary for the Superior Court to review and rule on it, but contends the court should, nonetheless, treat the motion as an improperly filed "placeholder" because Petitioner never asked the court to rule on the motion.

The motion identified several grounds for relief, which were developed in the accompanying memorandum. Petitioner initially asked the court to allow him to amend once his claims could be reviewed by counsel. Screening counsel requested the court delay a ruling for a brief period and Petitioner subsequently asked the court to extend the time by sixty to ninety days. Those modest requests did not convert the properly filed motion into a mere placeholder or prevent the court from deciding the motion. Statutory tolling under AEDPA commences when an application for post-conviction relief is properly filed in state court and continues until the state court finally disposes of the motion. There is no separate requirement that petitioners take steps to ensure state courts reach a final disposition within a reasonable amount of time. Federal courts apply state law to determine whether an application for post-conviction relief was properly filed and when a final disposition occurred. Applying Massachusetts law here, the court finds Petitioner's May 3, 2002 Motion for New Trial was properly filed and remained pending until the final disposition of the superseding Motion for New Trial. The full period, from May 3, 2002 through October 1, 2021 is excluded when calculating the expiration of the one-year filing period under AEDPA.

Excluding the period from May 3, 2002 through October 1, 2021, only 260 days of the one-year period elapsed between August 15, 2001 and October 1, 2021. Another 35 days elapsed from August 7, 2023 through September 11, 2023, and statutory tolling applied to the period from September 11, 2023 through the filing of the petition. Since fewer than 300 days elapsed during those periods, the timeliness of the petition depends on how much, if any, of the time between October 1, 2021 and August 7, 2023, is excluded through equitable tolling.

8

B. Equitable Tolling

The Supreme Court has recognized that the AEDPA one-year limitations period is not jurisdictional. Courts are permitted to apply equitable tolling under certain circumstances. "[E]quitable tolling requires a habeas petitioner to demonstrate as necessary conditions for relief that (1) he has been pursuing his rights diligently, and (2) some extraordinary circumstance prevented timely filing . . . ." *Holmes v. Spencer (Homes II)*, 822 F.3d 609, 611 (1st Cir. 2016). When assessing whether equitable tolling is appropriate, lower courts must "exercise judgment in light of prior precedent, but with awareness of the fact that specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case." *Holland*, 560 U.S. at 650.

Exhaustion of the state collateral review process is a precondition for seeking habeas relief. Under Massachusetts law, the ordinary process for seeking collateral review of a conviction for first degree murder begins with the filing of a motion for new trial with the trial court. After the trial court rules on the motion, the petitioner must seek review by filing a gatekeeper application with a single justice of the SJC. In this case, the trial court's October 1, 2021 ruling denying Petitioner's motion for new trial expressly stated that the court lacked jurisdiction to rule in Petitioner's favor on his argument that he was denied unconflicted counsel during his direct appeal. Counsel understood that portion of the ruling as a directive from the state court to depart from the gatekeeper procedure and seek relief directly from the SJC for that court's failure to rule on his motion for withdrawal of counsel during his direct appeal in 2001. Acting on the good-faith belief that the unique facts of his case required him to exhaust his argument through an alternative process, Petitioner filed a motion directly with the SJC asking it to act on the outstanding motion to withdraw as counsel and to withdraw the rescript.

The SJC did not reject the motion and quickly return it to Petitioner as it had when Petitioner filed a procedurally improper motion with the SJC in 2001. In the absence of a similar rejection of his filing, Petitioner understood that his filing had been accepted. More than a year later, the SJC denied

9

relief and informed Petitioner that it considered the motion procedurally improper. Upon reading the decision, Counsel became concerned that the SJC rejected the filing based on a misunderstanding regarding the relief sought by Petitioner. Counsel filed a motion for reconsideration, seeking to clarify Petitioner's request. Only after the SJC denied that motion on August 7, 2023, did Petitioner realize his reliance on an alternative process had been misplaced and he had been diligently pursuing relief through an improper process. Petitioner promptly returned to the Superior Court and completed the process of exhausting pursuant to the ordinary procedure for obtaining state collateral review.

It is clear that Petitioner's efforts to exhaust his claims prior to filing his petition with this court were complicated by state action and the unique procedural history of his case. First, the SJC failed to rule on Petitioner's motion for counsel to withdraw during his direct appeal, then when he tried to raise the issue on collateral review, the Superior Court stated that it lacked jurisdiction to review the issue. Unsure how to proceed, Petitioner sought relief directly from the SJC and, when the filing was not quickly rejected, believed the filing was proper, only learning otherwise a year later. *See Holmes I*, 658 F.3d at 63 (finding there could be a basis for equitable tolling if state action "led [the petitioner] to believe that his Motion was in fact properly filed, even though it would later prove to have been improper"). Once the SJC removed all doubt that Petitioner's filing was not a procedurally proper way to exhaust his argument, he quickly returned to Superior Court to ensure he had properly exhausted before seeking relief here. For these reasons, the court finds Petitioner has been pursuing his rights diligently and extraordinary circumstances prevented the timely filing of this habeas petition. *See Holmes II*, 822 F.3d at 611. Therefore, equitable tolling is appropriately applied to the period between October 1, 2021 and August 7, 2023.

V.  CONCLUSION

For the reasons discussed above, the court finds the one-year, AEDPA limitations period ran for 295 days between August 15, 2001 and May 3, 2002 and between August 7, 2023 and September 11, 2023. Statutory tolling excluded the time between May 3, 2002 and October 1, 2021, and between September 11, 2023 and March 27, 2024. Finally, the period from October 1, 2021 through August 7, 2023, is equitably tolled. The court, therefore, concludes the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus (Dkt. No. 1) was timely filed. Respondent's Motion to Dismiss (Dkt. No. 16) is denied, and Respondent is directed to file a substantive response to the petition within 21 days of this order.

It is So Ordered.

/s/ Mark G. Mastroianni
MARK G. MASTROIANNI
United States District Judge